JUDGE SULLIVAN

'09 CIV 7206

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiffs
HAT MARINE SERVICES LLC and TERRA
MARINE SHIP MANAGEMENT (PVT) LTD.
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

RECEIVED
AUG 1 4 2009
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HAT MARINE SERVICES LLC and TERRA
MARINE SHIP MANAGEMENT (PVT) LTD.,

09 Civ.

                Plaintiffs,

**VERIFIED COMPLAINT**

    -against-

MILITARY INSURANCE COMPANY a/k/a VOENNO-
STRAHOVAYA KOMPANIYA a/k/a VSK
INSURANCE HOUSE a/k/a OPEN JOINT STOCK
COMPANY MILITARY INSURANCE COMPANY a/k/a
OJSC MILITARY INSURANCE COMPANY,

                Defendant.
-------------------------------------------------------------------X

Plaintiffs, HAT MARINE SERVICES LLC ("Hat Marine") and TERRA MARINE SHIP

MANAGEMENT (PVT) LTD. ("Terra Marine") (collectively, "Plaintiffs"), by their attorneys,

Brown Gavalas & Fromm LLP, as and for a Verified Complaint against defendant, MILITARY

INSURANCE COMPANY a/k/a VOENNO-STRAHOVAYA KOMPANIYA a/k/a VSK

INSURANCE HOUSE a/k/a OPEN JOINT STOCK COMPANY MILITARY INSURANCE

COMPANY a/k/a OJSC MILITARY INSURANCE COMPANY ("Defendant"), allege upon

information and belief as follows:

    1.      This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure.  The Court has jurisdiction under 28 U.S.C. § 1333.

2.    At all material times, Hat Marine was and now is a foreign corporation organized and existing under and by virtue of the laws of the Marshall Islands, with an office and place of business at Office No. 21, Building No. 49-Dream Building No. 1, Road No. 2701, Block No. 327, Manama, Bahrain.

3.    At all material times, Terra Marine was and now is a foreign corporation organized and existing under and by virtue of the laws of a foreign country, with an office and place of business at 2nd Floor, Old Ralli Building, Talpur Road Off: 1.1 Chundrigar Road, Karachi, Pakistan.

4.    Upon information and belief, at all material times Defendant was and still is a foreign corporation organized and existing under and by virtue of the laws of Russia, with an office and place of business at 4 Ostrovnaya Street, Moscow, Russia.

5.    At all material times, Plaintiffs were the registered owners and commercial managers of the motor vessel HAT 1 ("the Vessel").

6.    On or about June 16, 2008, Defendant issued policy of insurance no. 0800012000153 to Plaintiffs, insuring the Vessel's "Hull and Machinery, Materials, Gear and Equipment etc., and everything connected therewith" ("the Policy"). A copy of the Policy is annexed hereto as Exhibit "A".

7.    Clause 6 of the Policy states that the Policy "covers loss of or damage to the subject-matter insured caused by . . . bursting of boilers breakage of shafts or any latent defect in the machinery or hull" as named perils entitled to coverage under the Policy.

8.    On or about December 4, 2008 while en route from Sinagpore to India, the Vessel's air system failed, causing the main engine cut off device to activate and the main engine

to blackout. This blackout caused serious damage to the main engine crankshaft and bearings, which will cost approximately $2,743,644.30 million to repair.

9.    To ensure the safety of the Vessel, Plaintiffs entered into a Lloyd's Open Form agreement dated December 12, 2008, with salvors Five Ocean Salvage. Pursuant to this agreement, the Vessel was towed to anchorage at Pasir Gudang, Malaysia as a port of refuge. Under the Lloyd's Open Form agreement, Plaintiffs are required to pay the salvors for their services, which are calculated on the basis of the Vessel's proportion of the overall salved funds. The salvage security requested by salvors is $1,237,500.00

10.    Plaintiffs also incurred expenditures of approximately $881,157.00 as a result of the main engine breakdown and subsequent salvage. Certain of these expenses will be allowed in General Average in due course and Plaintiffs will give credit for any contribution from cargo interests.

11.    The damages described in paragraphs 8-10 of the Verified Complaint are all insured perils under to the Policy, and Plaintiffs have otherwise met all requirements under the Policy.

12.    Defendant has failed and refused to pay the sums due to Plaintiffs under the Policy, despite the fact that such sums are currently due and owing. As a result, the Vessel has remained at the port of Pasir Gudang, Malaysia and has been unable to undertake any further voyages until it is repaired.

13.    Had Defendant promptly paid the sums due to Plaintiffs, the Vessel would have been operational by April 15, 2009 and, the Vessel would have received hire from the period of April 15, 2009 at approximately $4,500/day less commission at 2.5% for a net charter hire rate of $4,387.50. Up to August 14, 2009 these losses are $530,887.50 and continue to accrue at a daily

rate of $4,387.50.

14.     Under the terms of the Policy, all disputes between the parties are to be decided subject to English law and practice.  The Plaintiffs intend to commence London High Court proceedings against Defendant shortly.

15.  This action is in aid of said High Court proceedings.  Plaintiffs seek to obtain adequate security to satisfy a potential judgment in Plaintiffs' favor.

16.     In addition to recovering the principal amount due Plaintiffs, Plaintiffs are seeking to secure legal costs and interest that may be awarded to Plaintiffs as the prevailing parties in the London High Court proceedings.  Legal costs and interest are recoverable in London High Court proceedings.

17.     As best as can now be estimated, Plaintiffs expect to recover the following amounts in the London High Court proceedings:

| | | |
|---|---|---|
| a. | On the principal claim (¶¶ 8-10 and 13) | $5,393,188.80 |
| b. | 3 years of Interest at 6% per annum, compounded quarterly | $1,055,005.73 |
| c. | Costs (attorneys' fees, costs, etc.) | $404,694.37 [1] |
| | TOTAL | $6,852,888.90 |

18.     Plaintiffs have conducted an investigation as set out in the accompanying affidavit of Peter Skoufalos and Plaintiffs verily believe that Defendant cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure.

---

[1] This is based on estimated costs of London High Court Proceedings on the basis of a four day hearing with preparation by two London lawyers at £305/hr and £220/ hr, with Lawyers' costs, including, submissions, witness statements, disclosure, reporting to clients, attendance at court hearing attendance on opponents, attendance on expert, preparation of applications, preparation of hearing bundles, attendances on Counsel say £115,375. Counsel's brief fees and refreshers say £35,000 brief plus £2,750 refreshers say £50,000, court fees say £5,000. Costs of 3 witnesses attending trial (hotel, costs, transportation etc) say £12,000 and Expert's fees of say, £25,000. Total: £245,125 or US$404,694.37 based on a conversion rate £1 = $1.65097.

19.    As an insurer of ocean-going cargo vessels, Defendant will likely be receiving premium payments from the owners and managers of vessels insured by Defendant.

20.    Payments for all premiums that Plaintiffs owed to Defendant were paid in U.S. Dollars via intermediary insurance brokers, and upon information and belief, Defendant's other insureds also pay premium to Defendant in U.S. Dollars.

21.    Upon information and belief, said premium payments due from Defendant's insureds to Defendant will be paid in U.S. Dollars through banks located within the District.

22.    Upon information and belief, Defendant cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but is believed to have or will have during the pendency of this action assets within this District, specifically including cash, funds, freight, hire, accounts, electronic fund transfers and other property, in the hands of garnishees in the District including, but not limited to, American Express Bank, Ltd.; ABN-AMRO Bank; Bank of Tokyo Mitsubishi UFJ Ltd.; Barclays Bank; Calyon; Standard Chartered PLC; HSBC Bank; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Deutsche Bank; Citibank; Mashreq Bank; Bank of China; UBS AG; and Wachovia Bank, which are believed to be due and owing to the Defendant.

Plaintiff prays:

A.  That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all matters alleged in the Verified Complaint;

B.  That because the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to

Rule B of the Supplemental Admiralty Rules, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including American Express Bank, Ltd.; ABN-AMRO Bank; Bank of Tokyo Mitsubishi UFJ Ltd.; Barclays Bank; Calyon; Standard Chartered PLC; HSBC Bank; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Deutsche Bank; Citibank; Mashreq Bank; Bank of China; UBS AG; and Wachovia Bank, which are due and owing to the Defendant, in the amount of $6,852,888.90, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B, answer the matters alleged;

  C.  That this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

  D.  That Plaintiffs have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
   August 14, 2009

        BROWN GAVALAS & FROMM LLP
        Attorneys for Plaintiffs
        HAT MARINE SERVICES LLC and TERRA
        MARINE SHIP MANAGEMENT (PVT) LTD.

    By: _____
        Peter Skoufalos (PS-0105)
        355 Lexington Avenue
        New York, New York 10017
        Tel: (212) 983-8500
        Fax: (212) 983-5946

**VERIFICATION**

STATE OF NEW YORK      )
                                     : ss.:
COUNTY OF NEW YORK   )

PETER SKOUFALOS, being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and of the firm of Brown Gavalas & Fromm LLP, attorneys for Plaintiffs.

2.      I have read the foregoing Verified Complaint and I believe the contents thereof are true.

3.      The reason this Verification is made by deponent and not by Plaintiffs is that Plaintiffs are foreign corporations, no officers or directors of which are within this jurisdiction.

4.      The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiffs.

_____
PETER SKOUFALOS

Sworn to before me this
14th day of August, 2009

_____
Notary Public

**EVAN B. RUDNICKI**
**Notary Public of the State of New York**
No. 02RU6142314
Qualified in Rockland County
Term Expires March 13, 2010

7

# EXHIBIT "A"

**ВСК** СТРАХОВОЙ ДОМ
ВОЕННО-СТРАХОВАЯ КОМПАНИЯ
MILITARY INSURANCE COMPANY

СТРАХОВОЙ ПОЛИС

0800012000153

INSURANCE POLICY

(VESSEL)
(m/v "HAT 1")

WE, The MILITARY INSURANCE COMPANY, certify the accept of the application from the Applicant hereinafter named as an Assured.

WE hereby agree, in consideration of payment to us by or on behalf of the Assured of the premium specified in the Schedule, to insure against loss damage liability or expense in the manner hereinafter provided.

This Insurance Policy along with the Schedule, The Institute of London Underwriters Clauses, other Clauses and Warranties stated in the Schedule and attached herewith form the Contract of Insurance between the Assured and The Military Insurance Company, and the cover provided by this insurance shall be as specified in this Policy of Insurance and in those Clauses and Warranties.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

IN WITNESS whereof the Deputy General Director has subscribed his name for and on behalf of The Military Insurance Company.

Andrey Korsunskiy
Head of Marine Hull Insurance Division
of the Military Insurance Company

Issued in Moscow
the 16th day of June 2008

This Policy is not valid unless it bears the embossment of The Military Insurance Company.

## SCHEDULE

**Attaching to and forming part of Insurance Policy No. 0800012000153
dated the 16th of June 2008.**

**ASSURED:**

HAT Marine Services LLC, Office No. 21, Building #49-Dream Building #1, Road # 2701, Block #327, Manama, Kingdom of Bahrain as Owners and/or Terra-Marine Ship Management (PVT) Ltd as Managers as their respective rights and interests may appear.

**VESSEL:**

| Name | IMO No. | Type | Built | GT | Register | Flag | Value, USD |
|------|---------|------|-------|-----|----------|------|------------|
| "HAT 1" | 8511445 | container | 1987 | 8,689 | LR | Panama | 9,000,000 |

**INTEREST:**

Hull and Machinery, Materials, Gear and Equipment etc. and everything connected therewith valued as above.
Hull & Machinery etc as above War Risks valued as above.

**SUM INSURED:**

100% of the above value.

**PERIOD:**

12 months with effect from the 16th June 2008 at 13:00 hrs Copenhagen time.

**TRADING AREA:**

Worldwide subject to the Institute Warranties Cl. 26 (1/7/76) according to the vessel's existing class requirements.
War Risks subject to current London Market War, Strikes, Terrorism and Related Perils Listed Area's.

**CONDITIONS:**

Institute Time Clauses - Hulls Cl. 280 (1/11/95) excluding Collision Liability absolutely.
Clause 12 Deductible: USD 100,000.
Institute War & Strikes clauses Hulls Time Cl. 281 (1/10/83).
Blocking and Trapping Endorsement LPO 444.
Institute Notice of Cancelation, Automatic Termination of Cover and War and Nuclear Exclusion Clause - Hulls, Etc. Cl. 359 (1/11/95).
Institute Radioactive Contamination, Chemical, Biological, Bio-chemical and Electromagnetic Weapons Exclusion Clause Cl. 370 (10/11/03).
Institute Cyber Attack Exclusion Clause Cl. 380 (10/11/03).
Deferred Payment of Premium Clause as attached.

**PREMIUM:**

USD 117,000 per annum and pro-rata. Cancelling return only.

The Assured is completely aware and has accepted terms and conditions of this Insurance.

SIGNATURE: _____    DATE: " ____ " _____ , 2008

THE ATTACHED CLAUSES AND ENDORSEMENTS FORM PART OF THIS POLICY

*page 1 of 22*

1/11/95    These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a)  in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events;
(b)  in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".

(FOR USE ONLY WITH THE CURRENT MAR POLICY FORM)

## INSTITUTE TIME CLAUSES
## HULLS



This insurance is subject to English law and practice

**1    NAVIGATION**

1.1    The Vessel is covered subject to the provisions of this insurance at all times and has leave to sail or navigate with or without pilots, to go on trial trips and to assist and tow vessels or craft in distress, but it is warranted that the Vessel shall not be towed, except as is customary or to the first safe port or place when in need of assistance, or undertake towage or salvage services under a contract previously arranged by the Assured and/or Owners and/or Managers and/or Charterers. This Clause 1.1 shall not exclude customary towage in connection with loading and discharging.

1.2    This insurance shall not be prejudiced by reason of the Assured entering into any contract with pilots or customary towage which limits or exempts the liability of the pilots and/or tugs and/or towboats and/or their owners when the Assured or their agents accept or are compelled to accept such contracts in accordance with established local law or practice.

1.3    The practice of engaging helicopters for the transportation of personnel, supplies and equipment to and/or from the Vessel shall not prejudice this insurance.

1.4    In the event of the Vessel being employed in trading operations which entail cargo loading or discharging at sea from or into another vessel (not being a harbour or inshore craft) no claim shall be recoverable under this insurance for loss of or damage to the Vessel or liability to any other vessel arising from such loading or discharging operations, including whilst approaching, lying alongside and leaving, unless previous notice that the Vessel is to be employed in such operations has been given to the Underwriters and any amended terms of cover and any additional premium required by them have been agreed.

1.5    In the event of the Vessel sailing (with or without cargo) with an intention of being (a) broken up, or (b) sold for breaking up, any claim for loss of or damage to the Vessel occurring subsequent to such sailing shall be limited to the market value of the Vessel as scrap at the time when the loss or damage is sustained, unless previous notice has been given to the Underwriters and any amendments to the terms of cover, insured value and premium required by them have been agreed. Nothing in this Clause 1.5 shall affect claims under Clauses 8 and/or 10.

**2    CONTINUATION**

Should the Vessel at the expiration of this insurance be at sea and in distress or missing, she shall, provided notice be given to the Underwriters prior to the expiration of this insurance, be held covered until arrival at the next port in good safety, or if in port and in distress until the Vessel is made safe, at a pro rata monthly premium.

**3    BREACH OF WARRANTY**

Held covered in case of any breach of warranty as to cargo, trade, locality, towage, salvage services or date of sailing, provided notice be given to the Underwriters immediately after receipt of advices and any amended terms of cover and any additional premium required by them be agreed.

**4    CLASSIFICATION**

4.1    It is the duty of the Assured, Owners and Managers at the inception of and throughout the period of this insurance to ensure that

4.1.1    the Vessel is classed with a Classification Society agreed by the Underwriters and that her class within that Society is maintained,

4.1.2    any recommendations requirements or restrictions imposed by the Vessel's Classification Society which relate to the Vessel's seaworthiness or to her maintenance in a seaworthy condition are complied with by the dates required by that Society,

4.2    In the event of any breach of the duties set out in Clause 4.1 above, unless the Underwriters agree to the contrary in writing, they will be discharged from liability under this insurance as from the date of the breach provided that if the Vessel is at sea at such date the Underwriters' discharge from liability is deferred until arrival at her next port.

4.3    Any incident condition or damage in respect of which the Vessel's Classification Society might make recommendations as to repairs or other action to be taken by the Assured, Owners or Managers must be promptly reported to the Classification Society.

4.4    Should the Underwriters wish to approach the Classification Society directly for information and/or documents, the Assured will provide the necessary authorization.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52

(Continued)

5    **TERMINATION**    53

**This Clause 5 shall prevail notwithstanding any provision whether written typed or printed in this**    54
**insurance inconsistent therewith.**    55

Unless the Underwriters agree to the contrary in writing, this insurance shall terminate automatically at the time    56
of    57

5.1    change of the Classification Society of the Vessel, or change, suspension, discontinuance, withdrawal or    58
expiry of her Class therein, or any of the Classification Society's periodic surveys becoming overdue    59
unless an extension of time for such survey be agreed by the Classification Society, provided that if the    60
Vessel is at sea such automatic termination shall be deferred until arrival at her next port. However    61
where such change, suspension, discontinuance or withdrawal of her Class or where a periodic survey    62
becoming overdue has resulted from loss or damage covered by Clause 6 of this insurance or which    63
would be covered by an insurance of the Vessel subject to current Institute War and Strikes Clauses    64
Hulls – Time such automatic termination shall only operate should the Vessel sail from her next port    65
without the prior approval of the Classification Society or in the case of a periodic survey becoming    66
overdue without the Classification Society having agreed an extension of time for such survey,    67

5.2    any change, voluntary or otherwise, in the ownership or flag, transfer to new management, or charter    68
on a bareboat basis, or requisition for title or use of the Vessel, provided that, if the Vessel has cargo    69
on board and has already sailed from her loading port or is at sea in ballast, such automatic termination    70
shall if required be deferred, whilst the Vessel continues her planned voyage, until arrival at final port    71
of discharge if with cargo or at port of destination if in ballast. However, in the event of requisition for    72
title or use without the prior execution of a written agreement by the Assured, such automatic termination    73
shall occur fifteen days after such requisition whether the Vessel is at sea or in port.    74

A pro rata daily net return of premium shall be made provided that a total loss of the Vessel, whether by insured    75
perils or otherwise, has not occurred during the period covered by this insurance or any extension thereof.    76

6    **PERILS**    77

6.1    This insurance covers loss of or damage to the subject-matter insured caused by    77
6.1.1    perils of the seas rivers lakes or other navigable waters    78
6.1.2    fire, explosion    79
6.1.3    violent theft by persons from outside the Vessel    80
6.1.4    jettison    81
6.1.5    piracy    82
6.1.6    contact with land conveyance, dock or harbour equipment or installation    83
6.1.7    earthquake volcanic eruption or lightning    84
6.1.8    accidents in loading discharging or shifting cargo or fuel    85
6.2    This insurance covers loss of or damage to the subject-matter insured caused by    86
6.2.1    bursting of boilers breakage of shafts or any latent defect in the machinery or hull    87
6.2.2    negligence of Master Officers Crew or Pilots    88
6.2.3    negligence of repairers or charterers provided such repairers or charterers are not an Assured    89
hereunder    90
6.2.4    barratry of Master Officers or Crew    91
6.2.5    contact with aircraft, helicopters or similar objects, or objects falling therefrom    92
provided that such loss or damage has not resulted from want of due diligence by the Assured, Owners,    93
Managers or Superintendents or any of their onshore management.    94
6.3    Masters Officers Crew or Pilots not to be considered Owners within the meaning of this Clause 6 should    95
they hold shares in the Vessel.    96
    97

7    **POLLUTION HAZARD**    98

This insurance covers loss of or damage to the Vessel caused by any governmental authority acting under the    98
powers vested in it to prevent or mitigate a pollution hazard or damage to the environment, or threat thereof,    99
resulting directly from damage to the Vessel for which the Underwriters are liable under this insurance, provided    100
that such act of governmental authority has not resulted from want of due diligence by the Assured, Owners or    101
Managers to prevent or mitigate such hazard or damage, or threat thereof. Master Officers Crew or Pilots not    102
to be considered Owners within the meaning of this Clause 7 should they hold shares in the Vessel.    103
    104

8    **3/4THS COLLISION LIABILITY**    105

8.1    The Underwriters agree to indemnify the Assured for three-fourths of any sum or sums paid by the    106
Assured to any other person or persons by reason of the Assured becoming legally liable by way of    107
damages for    108
8.1.1    loss of or damage to any other vessel or property on another vessel    108
8.1.2    delay to or loss of use of any such other vessel or property thereon    109
8.1.3    general average of, salvage of, or salvage under contract of, any such other vessel or property    110
thereon,    111
    112
where such payment by the Assured is in consequence of the Vessel hereby insured coming into collision    113
with any other vessel.    114
8.2    The indemnity provided by this Clause 8 shall be in addition to the indemnity provided by the other    114
terms and conditions of this insurance and shall be subject to the following provisions:    115
8.2.1    where the insured Vessel is in collision with another vessel and both vessels are to blame then,    116
unless the liability of one or both vessels becomes limited by law, the indemnity under this Clause    117
8 shall be calculated on the principle of cross-liabilities as if the respective Owners had been    118
compelled to pay to each other such proportion of each other's damages as may have been properly    119
allowed in ascertaining the balance or sum payable by or to the Assured in consequence of the    120
collision,    121
    122
8.2.2    in no case shall the Underwriters' total liability under Clauses 8.1 and 8.2 exceed their proportionate    123
part of three-fourths of the insured value of the Vessel hereby insured in respect of any one    124
collision.    125
8.3    The Underwriters will also pay three-fourths of the legal costs incurred by the Assured or which the    126
Assured may be compelled to pay in contesting liability or taking proceedings to limit liability, with the    127
prior written consent of the Underwriters.    128

*(Continued)*    **157**

EXCLUSIONS

8.4 Provided always that this Clause 8 shall in no case extend to any sum which the Assured shall pay for or in respect of

8.4.1 removal or disposal of obstructions, wrecks, cargoes or any other thing whatsoever

8.4.2 any real or personal property or thing whatsoever except other vessels or property on other vessels

8.4.3 the cargo or other property on, or the engagements of, the insured Vessel

8.4.4 loss of life, personal injury or illness

8.4.5 pollution or contamination, or threat thereof, of any real or personal property or thing whatsoever (except other vessels with which the insured Vessel is in collision or property on such other vessels) or damage to the environment, or threat thereof, save that this exclusion shall not extend to any sum which the Assured shall pay for or in respect of salvage remuneration in which the skill and efforts of the salvors in preventing or minimising damage to the environment as is referred to in Article 13 paragraph 1(b) of the International Convention on Salvage, 1989 have been taken into account.

## 9 SISTERSHIP

Should the Vessel hereby insured come into collision with or receiver salvage services from another vessel belonging wholly or in part to the same Owners or under the same management, the Assured shall have the same rights under this insurance as they would have were the other vessel entirely the property of Owners not interested in the Vessel hereby insured; but in such cases the liability for the collision or the amount payable for the services rendered shall be referred to a sole arbitrator to be agreed upon between the Underwriters and the Assured.

## 10 GENERAL AVERAGE AND SALVAGE

10.1 This insurance covers the Vessel's proportion of salvage, salvage charges and/or general average, reduced in respect of any under-insurance, but in case of general average sacrifice of the Vessel the Assured may recover in respect of the whole loss without first enforcing their right of contribution from other parties.

10.2 Adjustment to be according to the law and practice obtaining at the place where the adventure ends, as if the contract of affreightment contained no special terms upon the subject; but where the contract of affreightment so provides the adjustment shall be according to the York-Antwerp Rules.

10.3 When the Vessel sails in ballast, not under charter, the provisions of the York-Antwerp Rules, 1994 (excluding Rules XI(d), XX and XXI) shall be applicable, and the voyage for this purpose shall be deemed to continue from the port or place of departure until the arrival of the Vessel at the first port or place thereafter other than a port or place of refuge or a port or place of call for bunkering only. If at any such intermediate port or place there is an abandonment of the adventure originally contemplated the voyage shall thereupon be deemed to be terminated.

10.4 No claim under this Clause 10 shall in any case be allowed where the loss was not incurred to avoid or in connection with the avoidance of a peril insured against.

10.5 No claim under this Clause 10 shall in any case be allowed for or in respect of

10.5.1 special compensation payable to a salvor under Article 14 of the International Convention on Salvage, 1989 or under any other provision in any statute, rule, law or contract which is similar in substance

10.5.2 expenses or liabilities incurred in respect of damage to the environment, or the threat of such damage, or as a consequence of the escape or release of pollutant substances from the Vessel, or the threat or such escape or release.

10.6 Clause 10.5 shall not however exclude any sum which the Assured shall pay to salvors for or in respect of salvage remuneration in which the skill and efforts of the salvors in preventing or minimising damage to the environment as is referred to in Article 13 paragraph 1(b) of the International Convention on Salvage, 1989 have been taken into account.

## 11 DUTY OF ASSURED (SUE AND LABOUR)

11.1 In case of any loss or misfortune it is the duty of the Assured and their servants and agents to take such measures as may be reasonable for the purpose of averting or minimising a loss which would be recoverable under this insurance.

11.2 Subject to the provisions below and to Clause 12 the Underwriters will contribute to charges properly and reasonably incurred by the Assured their servants or agents for such measures. General average, salvage charges (except as provided for in Clause 11.5), special compensation and expenses as referred to in Clause 10.5 and collision defence or attack costs are not recoverable under this Clause 11.

11.3 Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.

11.4 When expenses are incurred pursuant to this Clause 11 the liability under this insurance shall not exceed the proportion of such expenses that the amount insured hereunder bears to the value of the Vessel as stated herein, or to the sound value of the Vessel at the time of the occurrence giving rise to the expenditure if the sound value exceeds that value. Where the Underwriters have admitted a claim for total loss and property insured by this insurance is saved, the foregoing provisions shall not apply unless the expenses of suing and labouring exceed the value of such property saved and then shall apply only to the amount of the expenses which is in excess of such value.

11.5 When a claim for total loss of the Vessel is admitted under this insurance and expenses have been reasonably incurred in saving or attempting to save the Vessel and other property and there are no proceeds, or the expenses exceed the proceeds, then this insurance shall bear its pro rata share of such proportion of the expenses, or of the expenses in excess of the proceeds, as the case may be, as may reasonably be regarded as having been incurred in respect of the Vessel, excluding all special compensation and expenses as referred to in Clause 10.5; but if the Vessel be insured for less than its sound value at the time of the occurrence giving rise to the expenditure, the amount recoverable under this clause shall be reduced in proportion to the under-insurance.

11.6 The sum recoverable under this Clause 11 shall be in addition to the loss otherwise recoverable under this insurance but shall in no circumstances exceed the amount insured under this insurance in respect of the Vessel.

## 12 DEDUCTIBLE

12.1 No claim arising from a peril insured against is to be payable under this insurance unless the aggregate of all such claims arising out of each separate accident or occurrence (including claims under Clauses 8, 10 and 11) exceeds the deductible amount agreed in which case this sum shall be deducted. Nevertheless the expense of sighting the bottom after stranding, if reasonably incurred specially for that purpose, shall be paid even if no damage be found. This Clause 12.1 shall not apply to a claim for total or constructive total loss of the Vessel or, in the event of such claim, to any associated claim under Clause 11 arising from the same accident or occurrence.

129
130
131
132
133
134
135
136
137
138
139
140
141
142
143
144
145
146
147
148
149
150
151
152
153
154
155
156
157
158
159
160
161
162
163
164
165
166
167
168
169
170
171
172
173
174
175
176
177
178
179
180
181
182
183
184
185
186
187
188
189
190
191
192
193
194
195
196
197
198
199
200
201
202
203
204
205
206
207
208
209
210
211
212
213

*(Continued)*

12.2 Claims for damage by heavy weather occurring during a single sea passage between two successive ports shall be treated as being due to one accident. In the case of such heavy weather extending over a period not wholly covered by this insurance the deductible to be applied to the claim recoverable hereunder shall be the proportion of the above deductible that the number of days of such heavy weather falling within the period of this insurance bears to the number of days of heavy weather during the single sea passage. The expression "heavy weather" in this Clause 12.2 shall be deemed to include contact with floating ice. — 214–220

12.3 Excluding any interest comprised therein, recoveries against any claim which is subject to the above deductible shall be credited to the Underwriters in full to the extent of the sum by which the aggregate of the claim unreduced by any recoveries exceeds the above deductible. — 221–223

12.4 Interest comprised in recoveries shall be apportioned between the Assured and the Underwriters, taking into account the sums paid by the Underwriters and the dates when such payments were made, notwithstanding that by the addition of interest the Underwriters may receive a larger sum than they have paid. — 224–227

**13  NOTICE OF CLAIM AND TENDERS** — 228

13.1 In the event of accident whereby loss or damage may result in a claim under this insurance, notice must be given to the Underwriters promptly after the date on which the Assured, Owners or Managers become or should have become aware of the loss or damage and prior to survey so that a surveyor may be appointed if the Underwriters so desire. — 229–232

If notice is not given to the Underwriters within twelve months of that date unless the Underwriters agree to the contrary in writing, the Underwriters will be automatically discharged from liability for any claim under this insurance in respect of or arising out of such accident or the loss or damage. — 233–235

13.2 The Underwriters shall be entitled to decide the port to which the Vessel shall proceed for docking or repair (the actual additional expense of the voyage arising from compliance with the Underwriters' requirements being refunded to the Assured) and shall have a right of veto concerning a place of repair or a repairing firm. — 236–239

13.3 The Underwriters may also take tenders or may require further tenders to be taken for the repair of the Vessel. Where such a tender has been taken and a tender is accepted with the approval of the Underwriters, an allowance shall be made at the rate of 30% per annum on the insured value for time lost between the despatch of the invitations to tender required by the Underwriters and the acceptance of a tender to the extent that such time is lost solely as the result of tenders having been taken and provided that the tender is accepted without delay after receipt of the Underwriters' approval. — 240–246

Due credit shall be given against the allowance as above for any amounts recovered in respect of fuel and store and wages and maintenance of the Master Officers and Crew or any member thereof, including amounts allowed in general average, and for any amounts recovered from third parties in respect of damages for detention and/or loss of profit and/or running expenses, for the period covered by the tender allowance or any part thereof. — 247–251

Where a part of the cost of the repair of damage other than a fixed deductible is not recoverable from the Underwriters allowance shall be reduced by a similar proportion. — 252–253

13.4 In the event of failure by the Assured to comply with the conditions of Clauses 13.2 and/or 13.3 a deduction of 15% shall be made from the amount of the ascertained claim. — 254–255

**14  NEW FOR OLD** — 256

Claims payable without deduction new for old. — 257

**15  BOTTOM TREATMENT** — 258

In no case shall a claim be allowed in respect of scraping gritblasting and/or other surface preparation or painting of the Vessel's bottom except that — 259–260

15.1 gritblasting and/or other surface preparation of new bottom plates ashore and supplying and applying any "shop" primer thereto, — 261–262

15.2 gritblasting and/or other surface preparation of: — 263

the butts or area of plating immediately adjacent to any renewed or refitted plating damaged during the course of welding and/or repairs, — 264–265

areas of plating damaged during the course of fairing, either in place or ashore, — 266

15.3 supplying and applying the first coat of primer/anti-corrosive to those particular areas mentioned in 15.1 and 15.2 above, — 267–268

shall be allowed as part of the reasonable cost of repairs in respect of bottom plating damaged by an insured peril. — 269–270

**16  WAGES AND MAINTENANCE** — 271

No claim shall be allowed, other than in general average, for wages and maintenance of the Master Officers and Crew or any member thereof, except when incurred solely for the necessary removal of the Vessel from one port to another for the repair of damage covered by the Underwriters, or for trial trips for such repairs, and then only for such wages and maintenance as are incurred whilst the Vessel is under way. — 272–275

**17  AGENCY COMMISSION** — 276

In no case shall any sum be allowed under this insurance either by way of remuneration of the Assured for time and trouble taken to obtain and supply information or documents or in respect of the commission or charges of any manager, agent, managing or agency company or the like, appointed by or on behalf of the Assured to perform such services. — 277–280

**18  UNREPAIRED DAMAGE** — 281

18.1 The measure of indemnity in respect of claims for unrepaired damage shall be the reasonable depreciation in the market value of the Vessel at the time this insurance terminates arising from such unrepaired damage, but not exceeding the reasonable cost of repairs. — 282–284

18.2 In no case shall the Underwriters be liable for unrepaired damage in the event of a subsequent total loss (whether or not covered under this insurance) sustained during the period covered by this insurance or any extension thereof. — 285–287

18.3 The Underwriters shall not be liable in respect of unrepaired damage for more than the insured value at the time this insurance terminates. — 288–289

**19  CONSTRUCTIVE TOTAL LOSS**

19.1  In ascertaining whether the Vessel is a constructive total loss, the insured value shall be taken as the repaired value and nothing in respect of the damaged or break-up value of the Vessel or wreck shall be taken into account.

19.2  No claim for constructive total loss based upon the cost of recovery and/or repair of the Vessel shall be recoverable hereunder unless such cost would exceed the insured value. In making this determination, only the cost relating to a single accident or sequence of damages arising from the same accident shall be taken into account.

**20  FREIGHT WAIVER**

In the event of total or constructive total loss no claim to be made by the Underwriters for freight whether notice of abandonment has been given or not.

**21  ASSIGNMENT**

No assignment of or interest in this insurance or in any moneys which may be or become payable thereunder is to be binding on or recognised by the Underwriters unless a dated notice of such assignment or interest signed by the Assured, and by the assignor in the case of subsequent assignment, is endorsed on the Policy and the Policy with such endorsement is produced before payment of any claim or return of premium thereunder.

**22  DISBURSEMENTS WARRANTY**

22.1  Additional insurances as follows are permitted:

22.1.1  *Disbursements, Managers' Commissions, Profits or Excess or Increased Value of Hull and Machinery.* A sum not exceeding 25% of the value stated herein.

22.1.2  *Freight, Chartered Freight or Anticipated Freight, insured for time.* A sum not exceeding 25% of the value as stated herein less any sum insured, however described, under 22.1.1.

22.1.3  *Freight or Hire, under contracts for voyage.* A sum not exceeding the gross freight or hire for the current cargo passage and next succeeding cargo passage (such insurance to include, if required, a preliminary and an intermediate ballast passage) plus the charges of insurance. In the case of a voyage charter where payment is made on a time basis, the sum permitted for insurance shall be calculated on the estimated duration of the voyage, subject to the limitation of two cargo passages as laid down herein. Any sum insured under 22.1.2 to be taken into account and only the excess thereof may be insured, which excess shall be reduced as the freight or hire is advanced or earned by the gross amount so advanced or earned.

22.1.4  *Anticipated Freight if the Vessel sails in ballast and not under Charter.* A sum not exceeding the anticipated gross freight on next cargo passage, such amount to be reasonably estimated on the basis of the current rate of freight at time of insurance plus the charges of insurance. Any sum insured under 22.1.2 to be taken into account and only the excess thereof may be insured.

22.1.5  *Time Charter Hire or Charter Hire for Series of Voyages.* A sum not exceeding 50% of the gross hire which is to be earned under the charter in a period not exceeding 18 months. Any sum insured under 22.1.2 to be taken into account and only the excess thereof may be insured, which excess shall be reduced as the hire is advanced or earned under the charter by 50% of the gross amount so advanced or earned but the sum insured need not be reduced while the total of the sums insured under 22.1.2 and 22.1.5 does not exceed 50% of the gross hire still to be earned under the charter. An insurance under this Section may begin on the signing of the charter.

22.1.6  *Premiums.* A sum not exceeding the actual premiums of all interests insured for a period not exceeding 12 months (excluding premiums insured under the foregoing sections but including, if required, the premium or estimated calls on any Club or War etc. Risk insurance) reducing pro rata monthly.

22.1.7  *Returns of Premium.* A sum not exceeding the actual returns which are allowable under any insurance but which would not be recoverable thereunder in the event of a total loss of the Vessel whether by insured perils or otherwise.

22.1.8  *Insurance irrespective of amount against:*
Any risks excluded by Clauses 24, 25, 26 and 27 below.

22.2  Warranted that no insurance on any interests enumerated in the foregoing 22.1.1 to 22.1.7 in excess of the amounts permitted therein and no other insurance which includes total loss of the Vessel P.P.I., F.I.A., or subject to any other like term, is or shall be effected to operate during the currency of this insurance by or for account of the Assured, Owners, Managers or Mortgagees. Provided always that a breach of this warranty shall not afford the Underwriters any defence to a claim by a Mortgagee who has accepted this insurance without knowledge of such breach.

**23  RETURNS FOR LAY-UP AND CANCELLATION**

23.1  To return as follows:

23.1.1  pro rata monthly net for each uncommenced month if this insurance be cancelled by agreement.

23.1.2  for each period of 30 consecutive days the Vessel may be laid up in a port or in a lay-up area provided such port or lay-up area is approved by the Underwriters

(a) ..................................................... per cent net not under repair.

(b) ..................................................... per cent net under repair.

23.1.3  The Vessel shall not be considered to be under repair when work is undertaken in respect of ordinary wear and tear of the Vessel and/or following recommendations in the Vessel's Classification Society survey, but any repairs following loss of or damage to the Vessel or involving structural alterations, whether covered by this insurance or otherwise shall be considered as under repair.

23.1.4  If the Vessel is under repair during part only of a period for which a return is claimable, the return shall be calculated pro rata to the number of days under 23.1.2 (a) and (b) respectively.

23.2  PROVIDED ALWAYS THAT

23.2.1  a total loss of the Vessel, whether by insured perils or otherwise, has not occurred during the period covered by this insurance or any extension thereof

23.2.2  in no case shall a return be allowed when the Vessel is lying in exposed or unprotected waters, or in a port or lay-up area not approved by the Underwriters

23.2.3  loading or discharging operations or the presence of cargo on board shall not debar returns but no return shall be allowed for any period during which the Vessel is being used for the storage of cargo or for lightering purposes

23.2.4  in the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly.

*(Continued)*

23.2.5    in the event of any return recoverable under this Clause 23 being based on 30 consecutive days which fall on successive insurances effected for the same Assured, this insurance shall only be liable for an amount calculated at pro rata of the period rates 23.1.2(a) and/or (b) above for the number of days which come within the period of this insurance and to which a return is actually applicable. Such overlapping period shall run, at the option of the Assured, either from the first day on which the Vessel is laid up or the first day of a period of 30 consecutive days as provided under 23.1.2(a) or (b) above.    371 372 373 374 375 376 377

The following clauses shall be paramount and shall override anything contained in this insurance inconsistent therewith.    378 379

**24  WAR EXCLUSION**    380

In no case shall this insurance cover loss damage liability or expense caused by    381

24.1    war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power    382 383

24.2    capture seizure arrest restraint or detainment (barratry and piracy excepted), and the consequences thereof or any attempt thereat    384 385

24.3    derelict mines torpedoes bombs or other derelict weapons of war.    386

**25  STRIKES EXCLUSION**    387

In no case shall this insurance cover loss damage liability or expense caused by    388

25.1    strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions    389

25.2    any terrorist or any person acting from a political motive.    390

**26  MALICIOUS ACTS EXCLUSION**    391

In no case shall this insurance cover loss damage liability or expense arising from    392

26.1    the detonation of an explosive    393

26.2    any weapon of war    394

and caused by any person acting maliciously or from a political motive.    395

**27  RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE**    396

In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from    397 398

27.1    ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel    399 400

27.2    the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof    401 402

27.3    any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.    403 404



CL. 280.    *Sold by Witherby & Co. Ltd., London.* --- © Copyright --- The Institute of London Underwriters

"These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a) in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events;
(b) in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".
1/7/76

# INSTITUTE WARRANTIES

1. Warranted no:—
   - (a) Atlantic Coast of North America, its rivers or adjacent islands,
     - (i) north of 52° 10' N. Lat. and west of 50° W. Long.;
     - (ii) south of 52° 10' N. Lat. in the area bounded by lines drawn between Battle Harbour/Pistolet Bay; Cape Ray/Cape North; Port Hawkesbury/Port Mulgrave and Baie Comeau/Matane, between 21st December and 30th April both days inclusive.
     - (iii) west of Baie Comeau/Matane (but not west of Montreal) between 1st December and 30th April both days inclusive.
   - (b) Great Lakes or St. Lawrence Seaway west of Montreal.
   - (c) Greenland Waters.
   - (d) Pacific Coast of North America its rivers or adjacent islands north of 54° 30' N. Lat., or west of 130° 50' W. Long.
2. Warranted no Baltic Sea or adjacent waters east of 15° E. Long.
   - (a) North of a line between Mo (63° 24' N. Lat.) and Vasa (63° 06' N. Lat.) between 10th December and 25th May b.d.i.
   - (b) East of a line between Viipuri (Vyborg) (28° 47' E. Long.) and Narva (28° 12' E. Long.) between 15th December and 15th May b.d.i.
   - (c) North of a line between Stockholm (59° 20' N. Lat.) and Tallinn (59° 24' N. Lat.) between 8th January and 5th May b.d.i.
   - (d) East of 22° E. Long., and south of 59° N. Lat. between 28th December and 5th May b.d.i.
3. Warranted not North of 70° N. Lat. other than voyages direct to or from any port or place in Norway or Kola Bay.
4. Warranted no Behring Sea, no East Asian waters north of 46° N. Lat. and not to enter or sail from any port or place in Siberia except Nakhodka and/or Vladivostock.
5. Warranted not to proceed to Kerguelen and/or Crozet islands or south of 50° S. Lat., except to ports and/or places in Patagonia and/or Chile and/or Falkland Islands, but liberty is given to enter waters south of 50° S. Lat., if en route to or from ports and/or places not excluded by this warranty.
6. Warranted not to sail with Indian Coal as cargo:
   - (a) between 1st March and 30th June, b.d.i.
   - (b) between 1st July and 30th September, b.d.i., except to ports in Asia, not West of Aden or East of or beyond Singapore.

CL. 26.       *Sold by Witherby & Co. Ltd., London.* — © Copyright — The Institute of London Underwriters

"These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a) in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events;
(b) in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".
1/11/92

# INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Subject to the Underwriters' rights set forth above:

(a) It is further agreed that the Assured may serve process upon its senior partner in the firm of:

**Mendes & Mount (Attorneys). 750 Seventh Avenue, New York, N.Y. 10019-6829**

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b) The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c) The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgagee.

(d) Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

**If this clause is attached to a contract of reinsurance the terms insurance and Assured shall mean reinsurance and Reassured respectively.**

CL. 355.       *Sold by Witherby & Co. Ltd., London.* — © Copyright — The Institute of London Underwriters

1/11/95   "These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a)  in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events;
(b)  in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".

**(FOR USE ONLY WITH THE CURRENT MAR POLICY FORM)**

## INSTITUTE WAR AND STRIKES CLAUSES

### Hulls-Time

SPECIMEN

This insurance is subject to English law and practice

| | | |
|---|---|---|
| **1** | **PERILS** | 1 |
| | Subject always to the exclusions hereinafter referred to, this insurance covers loss of or damage to the Vessel caused by | 2 |
| | | 3 |
| 1.1 | war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power | 4 |
| | | 5 |
| 1.2 | capture seizure arrest restraint or detainment, and the consequences thereof or any attempt thereat | 6 |
| 1.3 | derelict mines torpedoes bombs or other derelict weapons of war | 7 |
| 1.4 | strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions | 8 |
| 1.5 | any terrorist or any person acting maliciously or from a political motive | 9 |
| 1.6 | confiscation or expropriation | 10 |

**2    INCORPORATION**

The Institute Time Clauses-Hulls 1/11/95 (including ¾ths Collision Liability Clause amended to ⅘ths) except Clauses 1.4, 2, 3, 4, 5, 6, 12, 22.1.8, 23, 24, 25, 26 and 27 are deemed to be incorporated in this insurance in so far as they do not conflict with the provisions of these clauses.

Held covered in case of breach of warranty as to towage or salvage services provided notice be given to the Underwriters immediately after receipt of advices and any additional premium required by them be agreed.

**3    DETAINMENT**

In the event that the Vessel shall have been the subject of capture seizure arrest restraint detainment confiscation or expropriation, and the Assured shall thereby have lost the free use and disposal of the Vessel for a continuous period of 12 months then for the purpose of ascertaining whether the Vessel is a constructive total loss the Assured shall be deemed to have been deprived of the possession of the Vessel without any likelihood of recovery.

**4    NOTICE OF CLAIM AND TENDERS**

In the event of accident whereby loss or damage may result in a claim under this insurance, notice must be given to the Underwriters promptly after the date on which the Assured, Owners or Managers become or should have become aware of the loss or damage and prior to survey so that a surveyor may be appointed if the Underwriters so desire.

If notice is not given to Underwriters within twelve months of that date unless the Underwriters agree to the contrary in writing, the Underwriters will be automatically discharged from liability for any claim under this insurance in respect of or arising out of such accident or the loss or damage.

**5    EXCLUSIONS**

This insurance excludes

| | | |
|---|---|---|
| 5.1 | loss damage liability or expense arising from | |
| 5.1.1 | the outbreak of war (whether there be a declaration of war or not) between any of the following countries: | |
| | United Kingdom, United States of America, France, the Russian Federation, the People's Republic of China | |
| 5.1.2 | requisition, either for title or use, or pre-emption | |
| 5.1.3 | capture seizure arrest restraint detainment confiscation or expropriation by or under the order of the government or any public or local authority of the country in which the Vessel is owned or registered | |
| 5.1.4 | arrest restraint detainment confiscation or expropriation under quarantine regulations or by reason of infringement of any customs or trading regulations | |
| 5.1.5 | the operation of ordinary judicial process, failure to provide security or to pay any fine or penalty or any financial cause | |
| 5.1.6 | piracy (but this exclusion shall not affect cover under Clause 1.4), | |
| 5.2 | loss damage liability or expense directly or indirectly caused by or contributed to by or arising from | |
| 5.2.1 | ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel | |
| 5.2.2 | the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof | |
| 5.2.3 | any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter, | |
| 5.3 | loss damage liability or expense covered by the Institute Time Clauses-Hulls 1/11/95 (including ¾ths Collision Liability Clause amended to ⅘ths) or which would be recoverable thereunder but for Clause 12 thereof, | |
| 5.4 | any claim for any sum recoverable under any other insurance on the Vessel or which would be recoverable under such insurance but for the existence of this insurance, | |
| 5.5 | any claim for expenses arising from delay except such expenses as would be recoverable in principle in English law and practice under the York-Antwerp Rules 1994. | |

*(Continued)*      **181**

6    **TERMINATION**

6.1    This insurance may be cancelled by either the Underwriters or the Assured giving 7 days notice (such cancellation becoming effective on the expiry of 7 days from midnight of the day on which notice of cancellation is issued by or to the Underwriters). The Underwriters agree however to reinstate this insurance subject to agreement between the Underwriters and the Assured prior to the expiry of such notice of cancellation as to new rate of premium and/or conditions and/or warranties.

6.2    Whether or not such notice of cancellation has been given this insurance shall TERMINATE AUTOMATICALLY

6.2.1    upon the outbreak of war (whether there be a declaration of war or not) between any of the following countries:

United Kingdom, United States of America, France, the Russian Federation, the People's Republic of China.

6.2.2    in the event of the Vessel being requisitioned, either for title or use.

6.3    In the event either of cancellation by notice or of automatic termination of this insurance by reason of the operation of this Clause 6, or of the sale of the Vessel, pro rata net return of premium shall be payable to the Assured.

This insurance shall not become effective if, subsequent to its acceptance by the Underwriters and prior to the intended time of its attachment, there has occurred any event which would have automatically terminated this insurance under the provisions of Clause 6 above.



CL. 281.    *Sold by Witherby & Co. Ltd., London.* — © Copyright — The Institute of London Underwriters

182

1/1/95    "These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a) in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events:
(b) in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".

## INSTITUTE NOTICE OF CANCELLATION,
## AUTOMATIC TERMINATION OF COVER AND WAR AND NUCLEAR
## EXCLUSIONS CLAUSE - HULLS, ETC.

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

**1    Cancellation**

Cover hereunder in respect of the risks of war, etc may be cancelled by either the Underwriters or the Assured giving 7 days notice (such cancellation becoming effective on the expiry of 7 days from midnight of the day on which notice of cancellation is issued by or to the Underwriters). The Underwriters agree however to reinstate cover subject to agreement between the Underwriters and the Assured prior to the expiry of such notice of cancellation as to new rate of premium and/or conditions and/or warranties.

**2    Automatic Termination of Cover**

Whether or not such notice of cancellation has been given cover hereunder in respect of the risks of war, etc, shall TERMINATE AUTOMATICALLY

   2.1    upon the outbreak of war (whether there be a declaration of war or not) between any of the following:
           United Kingdom, United States of America, France, the Russian Federation, the People's Republic of China;

   2.2    in respect of any vessel, in connection with which cover is granted hereunder, in the event of such vessel being requisitioned either for title or use.

**3    Five Powers War and Nuclear Exclusions**

This insurance excludes

   3.1    loss damage liability or expense arising from

   3.1.1    the outbreak of war, whether there be a declaration of war or not, between any of the following:
             United Kingdom, United States of America, France, the Russian Federation, the People's Republic of China;

   3.1.2    requisition either for title or use.

   3.2. loss damage liability or expense directly or indirectly caused by or arising from

   3.2.1    ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   3.2.2    the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   3.2.3    any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

**4    Law and Practice**

This clause is subject to English law and practice.

---

Cover in respect of the risks of war, etc shall not become effective if, subsequent to acceptance by the Underwriters and prior to the intended time of attachment of risk, there has occurred any event which would have automatically terminated cover under the provisions of this clause.



**CL. 359.**    *Sold by Witherby & Co. Ltd., London.* — © Copyright — The Institute of London Underwriters

"These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a) in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events:
(b) in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".
1/10/90

## INSTITUTE RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1   ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3   any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

---

**CL. 356.**   *Sold by Witherby & Co. Ltd., London.* — © Copyright — The Institute of London Underwriters

"These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a) in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to
(b) in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".
"These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
10/11/03

## INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith

1.   In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

     1.1   ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

     1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

     1.3   any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

     1.4   the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

     1.5   any chemical, biological, bio-chemical, or electromagnetic weapon.

---

**CL. 370.**  *Sold by Witherby & Co. Ltd., London.*                                   — © Copyright

"These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a) in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events:
(b) in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".
01/11/02

## INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

      1.1   ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

      1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

1.3    any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

1.4    the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

**CL. 356A.**    *Sold by Witherby & Co. Ltd., London.* — © Copyright — The Institute of London Underwriters

---

"These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a) in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events;
(b) in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".

01/11/02

## INSTITUTE CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC WEAPONS AND CYBER ATTACK EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.    In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

     1.1    any chemical, biological, bio-chemical or electromagnetic weapon.

     1.2    the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, computer virus or process or any other electronic system.

**CL. 365.**    *Sold by Witherby & Co. Ltd., London.* — © Copyright — The Institute of London Underwriters

---

"These clauses are purely illustrative. Different policy conditions may be agreed. The specimen clauses are available to any interested person upon request. In particular:
(a) in relation to any clause which excludes losses from the cover, insurers may agree a separate insurance policy covering such losses or may extend the clause to cover such events;
(b) in relation to clauses making cover of certain risks subject to specific conditions each insurer may alter the said conditions".

10/11/03

## INSTITUTE CYBER ATTACK EXCLUSION CLAUSE

1.1    Subject only to clause 1.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

1.2    Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, clause 1.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

**CL. 380.** *Sold by Witherby & Co. Ltd., London.*      — © Copyright

**263**